## Goad v. Lewis, et al.

(Decided March 2, 1917.)

### Appeal from Barren Circuit Court.

Corporations—Sale of Shares of Stock—Action to Recover Purchase Price.—A recovery of the purchase price of shares of stock in a corporation will not be granted upon the ground that the shares were worthless and were bought by the plaintiff through the fraudulent misrepresentations of the defendants, where the proof shows that the shares had a market value practically equivalent to the price at which they were sold to the plaintiff.

C. E. BOLES and C. H. HATCHETT for appellant.

BAIRD & RICHARDSON for appellees.

Opinion of the Court by Judge Miller—Affirming.

This is a suit by the appellant, Goad, to recover the purchase price of fourteen shares of the capital stock of "The Glasgow Mutual Agency Company," sold to him by the appellees, George R. Lewis and Lawrence G. Warder.

On August 1, 1907, The Glasgow Mutual Agency Company was incorporated with a capital stock of $20,000.00. It was authorized "to act as agent and employee of other persons, companies and corporations, and to employ, select and appoint agents of other persons, companies and corporations, and to acquire and hold property as agent, employee and trustee of other persons, companies and corporations, and to acquire and hold property for itself."

The immediate purpose of the corporation seems to have been the consolidation of the fire insurance business in Barren and adjoining counties. At that time Huff & Huff and Lewis, Hawkins & Co., were successful fire insurance agencies in Glasgow, Barren county.

By a writing dated August 30, 1907, Huff & Huff conveyed their insurance business to G. R. Lewis and L. G. Warder for a consideration of $5,500.00 and the agreement upon the part of Huff & Huff not to engage in the insurance business in Barren, Monroe, Columbia, Clinton, Wayne, Adair, Allen, Metcalfe and Hart counties for a period of five years; and, about the same time and upon the same condition, Lewis, Hawkins & Co. conveyed their insurance business to Lewis and Warder for $3,500.00. Lewis and Warder in turn assigned their contracts with Huff & Huff and with Lewis, Hawkins & Co., to the insurance firm of Lewis, Warder & Co., composed of the defendants, George R. Lewis, L. G. Warder and John T. Hawkins.

In September, 1907, Lewis, Warder & Co., transferred their insurance business, thus consolidated, to Basil Richardson and his associates, for the sum of $20,000.00, and by an endorsement upon the contract of September 27, 1907, Richardson and his associates sold their contract with Lewis, Warder & Co., and all their rights and interests thereunder, to The Glasgow Mutual Agency Company for and in consideration of that corporation issuing and delivering to each of the assignors the number of shares of stock of The Glasgow Mutual Agency Company specified in the assignment. In this

way Lewis became the owner of thirty-five shares, and Warder the owner of forty shares of the stock of The Glasgow Mutual Agency Company.

The contract whereby the company became the owner of the business of Lewis, Warder & Co., was the only asset which The Glasgow Mutual Agency Company ever acquired, although its articles of incorporation seem to indicate that its proposed sphere of action was much broader.

Beginning with September, 1907, The Mutual Agency Company received the profits of the business of Lewis, Warder & Co., and declared several dividends ranging from seven to eight per cent., annually. The minutes are quite irregular and imperfect; but it is agreed by the witnesses that dividends other than those shown by the minutes were declared and paid. A dividend of eight per cent. was declared in 1907, and a like dividend in 1908; while a dividend of 7½ per cent. was declared in January, 1911.

At this time the appellant, Claude A. Goad, owned a house and lot in Glasgow which he had bought from the John Lewis Planing Mill Company, and upon which there was a lien for $1,200.00, and some interest. By their deed dated November 25, 1911, C. A. Goad and his wife conveyed the house and lot to Warder and Lewis in consideration of their assuming the lien above referred to, "and other valuable considerations which have been accepted by C. A. Goad." The unspecified part of the consideration consisted of $140.00 in cash, and fourteen shares of stock in The Glasgow Mutual Agency Company, which Goad says were put in at the agreed valuation of $65.00 per share. Giving the stock a valuation of $65.00 per share, the aggregate consideration was $2,250.00. It does not clearly appear that the Agency Company paid any dividend after Goad acquired his stock in November, 1911, although it is intimated by one witness that Goad collected at least one dividend. That, however, is not important, since it is agreed by all the witnesses that by the time this suit was begun, the Agency Company had become bankrupt.

On January 28, 1915, Goad brought this action against Lewis and Warder to recover $910.00, the alleged purchase price of the fourteen shares of stock at $65.00 per share, upon the ground that they were worthless when he bought them in 1911, and that they had been

sold to him through the fraudulent misrepresentation of Lewis and Warder, as to their value. By their answer, which they sustained by their testimony, Lewis and Warder denied that the house and lot were taken at an agreed valuation of $2,250.00, or that any valuation was placed by the parties upon the stock. On the contrary, they say they made a trade for the Goad property in which they agreed to assume and pay the lien for $1,200.00; to pay $140.00 for some urgent purpose such as the payment of taxes then due upon the property; and fourteen shares of stock in The Glasgow Mutual Agency Company. They deny the charge of fraud, and say that Goad made the trade after satisfying himself that the stock was worth whatever price he put upon it in making the trade.

The court dismissed the petition, and Goad appeals.

It is will thus be seen that the issue is entirely one of fact; and, that it is of a narrow scope.

It is charged in the petition that the corporation never made any money, and that it borrowed the money with which it paid the dividends. Goad testified explicitly that Warder represented to him that the stock was worth $65.00 per share, when, in reality, it was worthless, and that Lewis joined Warder in the representation. They, however, contradict Goad in this respect, and say they merely told him what dividends the stock had been paying, and that in their opinion it was good stock. The question of misrepresentation, may be put to one side, since the judgment will have to be affirmed upon the issue made as to the actual value of the stock.

In giving his opinion that the stock had no value on November 25, 1911, at the time he made the trade, or at any other time, Goad is sustained only by the testimony of W. C. Turner, who was a stockholder and director in The Glasgow Mutual Agency Company. On the contrary, there is proof by several witnesses that the stock had sold as late as 1913 at $50.00 per share, and that it had sold at prices ranging from $40.00 to $60.00 on other occasions. Furthermore, Holman bought some of the stock in 1908 at $55.00 per share, and sold a part of it in 1913 at $50.00; and he says it was worth at least $55.00 in November, 1911, when Goad acquired his stock.

Furthermore, it appears from the testimony of persons versed in the fire insurance business, that in view

of the fact that Lewis, Warder & Co. represented twelve or thirteen old line companies in six counties, with a renewal list of from $12,000.00 to $17,000.00 *per annum* in premiums, the stock of the Agency Company was worth from $50.00 to $60.00 per share.

Moreover, the collapse of the company is accounted for by the fact that Warder, who was an unusually active and able fire insurance man, and had charge of the business from the beginning, became addicted to the drink habit to such an extent as to permanently impair his usefulness as a business man. By reason of that fact, the business was neglected; became unprofitable; and resulted in disaster.

Furthermore, it appears from the testimony of Jewell, the man who built the Goad house for the John Lewis Planing Mill Company, that the lot was worth $300.00, and that the house cost $1,250.00. In Jewell's opinion the property was worth from $1,750.00 to $1,800.00, in November, 1911. At that time the lien upon the property, with accrued interest, amounted to $1,236.00; and, counting the stock as worth $40.00 per share, and adding $140.00 paid in cash, we have an aggregate of $1,876.00 received by Goad, which was the full value of the property, according to Jewell.

It thus appears that the stock did have a market value of at least $50.00 per share at the time Goad acquired his stock in November, 1911, and that the proof wholly fails to support the allegations of the petition, in this respect.

If the stock then had the market value at which it was taken by Goad, in the trade, he is in no position to complain, although it subsequently became worthless. The proof sustains the finding of the chancellor that the stock had the value at which it was acquired by Goad.

Judgment affirmed.